IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

QUINGLING SUN, et al.,               )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )    Civil Action No. 1:19-cv-00423
                                     )
BRADDOCK PLACE TOWNHOUSES            )
ASSOCIATION, et al.,                 )
                                     )
        Defendant.                   )

**Memorandum Opinion**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (Dkt. No. 121) and Defendant's Motion to Strike Plaintiffs' Opposition (Dkt. No. 130).

Plaintiffs Qingling Sun and Jinshan Tang are married and own a townhouse at 4751 Irvin Square, Alexandria, Virginia 22312 ("the Property"). Plaintiffs are Asian, of Chinese origin. Defendant Braddock Place Townhouses Association ("BPTA") is the governing homeowners' association for the neighborhood in which the Property is located. Defendant Gregory Piller is the President of the BPTA. Defendants Ahmad F. Ahmad and Karen Old are the Vice President and the Treasurer of the BPTA, respectively.

Plaintiffs purchased the Property in late August, 2016, from Mekdes Bogale. The Property settlement was August 19, recorded

August 22, 2016. Defendants were not parties to this sales contract. Prior to the sale, Plaintiffs had no communication with anyone affiliated with BPTA regarding parking at the Property. The neighborhood in which the Property is located consists of twenty townhomes; eighteen of the homes have garages, and two do not. Plaintiffs' Property is one of the two non-garaged townhomes. The neighborhood community is diverse, with Asian, Latin American or Hispanic, Caucasian, African American, and Turkish homeowners. Seven of the nine Asian homeowners saw no change in their parking situation in 2016.

Before purchasing the Property, Plaintiffs received the Braddock Place Townhouses Association Disclosure Packet for Prospective Buyer ("Disclosure Packet") of 4751 Irvin Square. The Disclosure Packet was addressed "To: Mekdes Bogale," and indicated that it was provided to Bogale pursuant to the Virginia Property Owners Act, Va. Code Ann. § 55-509. Defendant Ahmad provided the Packet to Bogale on August 13, 2016, in conjunction with the sale of the Property. Bogale signed the Disclosure Packet, acknowledging receipt on August 13, 2016. Bogale's real estate agent then gave the document to Plaintiffs' real estate agent. When Plaintiffs received the Disclosure Packet from their agent, they also signed the Packet, stating they acknowledged receipt and that they "read the information contained in this Association

Disclosure Packet on 13th of August, 2016." None of the Defendants signed the document.

Among the documents within the Disclosure Packet was the official Declaration of Covenants, Conditions and Restrictions of Braddock Place Townhouses Association ("Declaration of Covenants"), which is filed in the land records of Fairfax County, Virginia at Deed Book 5773, beginning at page 0079. Article II of the Declaration of Covenants, entitled "Property Rights," states:

> Section 3. Parking. Ownership of each Lot shall entitle the Owner or Owners thereof to the permanent exclusive use of one (1) parking space near and convenient to such Lot and the further reasonable use of other parking spaces that are not reserved for the permanent exclusive use of other Owners, together with the right of ingress and egress upon said parking area. . . .

Section 1 of the Article grants every owner the "right of easement and enjoyment in and to the Common Area," subject to a few, limited restrictions. Subsection C of the same section provides one such restriction, permitting the Association "to dedicate or transfer all or part of the Common Area" to a "public agency, authority or utility," subject "to the then existing applicable ordinance, statutes and laws," as well as "conditions as may be agreed to by the members."

In 2000, Gary Moran was Treasurer of the BPTA and owner of the Property. On June 20, 2000, the BPTA Board held a meeting during which the neighborhood parking was discussed. The Vice President stated that a general letter was to be sent to each

3

homeowner regarding the use of reserved and common area parking spaces. According to the letter, each unit with a driveway or garage was allowed one reserved numbered spot, with an exception for units 4749 and 4751, because they do not have garages. Instead, these two units were assigned one reserved and one common area spot as regular spots. In a meeting on July 17, 2001, the BPTA Board formally approved the designation of the two visitor parking places as reserved for units 4749 and 4751. Instruction was given to have the spaces painted to indicate this new designation. BPTA's handbook, provided and available to all unit owners, recognized the Board action taken regarding these parking modifications at the July 17 meeting. The handbook states that the "Board of Directors assigned two of the free [common use] spaces" to units 4749 and 4751, but that "these spaces cannot be conveyed."

On July 27, 2013, Moran sold the Property to Bogale. On the same date, the BPTA Board met and discussed the fact that the extra parking space assigned to Moran's unit could not be conveyed when he sold the Property. The Board decided to take no formal action to re-designate the space as a visitor space because there had been no complaints since the action taken by the Board in July, 2001.

On June 24, 2016, weeks before Plaintiffs purchased the Property, another Asian resident, Han Le ("Le") sent an email to Moran. Le was the owner of unit 4753, with parking adjacent to the

4

second parking space assigned to 4751. In her email, Le inquired about the validity of assigning the extra spot to unit 4751. Moran responded three days later, explaining that the spot was not conveyed with the property sale but that the Board had allowed the purchaser, Bogale, to use it. Moran suggested that if Bogale sold the house, Le should make the parking space a visitor spot again.

On August 19, 2016, three days before Plaintiffs' purchase of the Property was recorded, Le forwarded her email communications with Moran to Defendant Old. The BPTA Board held an Association meeting on September 21, 2016, at which a discussion of the parking space issue ensued. The Board acknowledged that a homeowner requested the extra space be restored to visitor parking. The Board also instructed the BPTA Treasurer to investigate whether any amendments were made to the covenants that would have legally given additional parking rights to these owners. If not, the Board determined that the parking spaces would have to be returned to visitor spaces and the spots repainted.

In October, 2016, BPTA disseminated the Braddock Place Townhouses Association Visitor Parking & Assigned Spaces Reading Packet to HOA Members. The Packet detailed BPTA's investigation of the parking issue raised by Le.

On October 24, 2016, BPTA held its monthly meeting. Le again raised the visitor parking space issue, indicating that the parking spot was potentially in violation of the Association's policy and

covenants. Plaintiff Sun was present and urged the Board not to discuss the topic. The Board advised Plaintiff that, because another homeowner raised the issue, it would be addressed. At the monthly meeting held November 23, 2016, the issue of the parking assignment was re-visited.

In April, 2017, Defendant Old, on behalf of BPTA retained Robert J. Segan, Esquire ("Segan") to obtain a legal opinion on the designation of additional common area parking spaces for exclusive use of units 4749 and 4751. Segan advised the BPTA that the only authority the Board had to regulate the unreserved parking spaces was to adopt reasonable regulations regarding their use if the Board found the use of those spaces by all owners had become unreasonable. The attorney opined that reserving two of the unreserved spaces for the exclusive use of two lots would not qualify as a reasonable regulation, especially in light of the language of Article II, Section I of the Declaration of Covenants, giving all owners an easement for the use of the common area. After two follow-up inquiries in late April and late June, 2017, Segan stated that no inaction or action taken by prior boards affected BPTA's inability to allow the two units to have extra space in the common area designated for their exclusive use. He advised the Board that it could not vote to allow such an outcome, and that it would take an agreement signed by three-fourths of the lot owners to effectuate such a change.

6

At a meeting on June 20, 2018, the Board discussed the parking issue and, by a vote of 3-1, voted to follow Segun's advice. They acknowledged that the agreement in 2001 by the Board of Directors to reassign the common property was null and void because the Board acted without authority and in violation of governing documents. On June 26, 2018, Defendant Piller repainted the two parking spaces in the common area previously designated for exclusive use by units 4749 and 4751.

On April 9, 2019, Plaintiff Sun filed the instant lawsuit, alleging violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and breach of contract against Defendant BPTA. Plaintiff later amended the Complaint, on July 16, 2019, to add her husband as co-plaintiff. On July 2, 2019, Defendants BPTA and Piller moved to dismiss the Complaint. Defendants Ahmad and Old also filed a Motion to Dismiss the Complaint on July 29, 2019. The Court denied both motions. Discovery is now closed and Defendants' case is ripe for summary judgment.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. See Dennis v. Columbia Colleton Med. Ctr., Inc., 290

F.3d 639, 644-45 (4th Cir. 2002). Summary judgment may be entered when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to find an issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A plaintiff alleging a violation of the Civil Rights Act of 1866 "must prove purposeful discrimination." Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989). To establish a prima facie under § 1981, a plaintiff must present direct or circumstantial evidence that (1) plaintiff is a member of a protected class; (2) that there was an intent to discriminate on the basis of race; and (3) the discrimination involves one or more of the protected activities enunciated in § 1981. Hampton v. Dillard Dept. Stores, Inc., 247 F.3d 1091, 1102, 1107 (10th Cir. 2001); see Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). The Civil Rights Act clearly protects all persons from racial discrimination in making and enforcing contracts. 42 U.S.C. § 1981(a), (b). To successfully plead a § 1981 claim, a plaintiff "first must show that he was deprived of the protected right and then establish causation." Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009, 1018 (2020).

Plaintiffs fail to establish that Defendants deprived them of a protected right under a contract. Plaintiffs allege that Defendants interfered with their right to two reserved parking spaces, predicated upon Plaintiffs' contract with BPTA. Plaintiffs cannot claim a right to the second parking space because the Declaration of Covenants granted a right of use to all homeowners within BPTA. The Declaration expressly grants each homeowner one designated parking space and the further reasonable use of other parking spaces not reserved for permanent exclusive use of other owners. The Declaration establishes the homeowners have a right of easement in the common areas, subject to change only under certain stated circumstances and by a members' vote. The easement to common area property runs with the land, including Plaintiffs' property. See White v. Boundary Ass'n, Inc., 271 Va., 624 S.E.2d 5 (2006). Prior Board action could not negate the Declaration, and the Board's attempts to designate two parking spaces in the common area as private spots for the benefit of 4749 and 4751 Irvin Square exceeded the its authority. The Board did not have the authority to change the language of the Declaration or to apply it in a manner inconsistent therewith, unless the Declaration was legally changed in accordance with the terms of the Declaration. Therefore, the parking spot designation was not a valid exercise of the Board's authority, and the contract between Bogale and Plaintiffs for the purchase of the Property could not include the second

parking spot. Considering the record as a whole, in the light most favorable to Plaintiffs, the Court finds Plaintiffs have not established that, but for their race, they would not have suffered the loss of a legally protected right. Comcast Corp., 140 S. Ct. at 1019.

Defendants also argue Plaintiffs fail to establish discriminatory intent. Plaintiffs claim that Defendants waited to reallocate the community parking spaces until Plaintiffs purchased the Property, assuming that Defendants did so because Plaintiffs are Asian. In the absence of direct evidence, courts may infer discriminatory intent from evidence of a general pattern of racial discrimination. Woods v. City of Greensboro, 855 F.3d 639 (4th Cir. 2017) (citation omitted). But the facts indicate that Defendants' actions were prompted by the concern of another apartment owner, who is a member of the same protected class as Plaintiffs. Consequently, the Board contacted an attorney who opined that the Association improperly reserved the two parking spaces at issue, basing his legal opinion on the official Declaration of Covenants in Fairfax County. Defendants discovered that the allocation of a second parking spot to 4751 Irvin Square deprived the other property owners, many of whom are either Asian or members other minority groups, of their right to use the communal space. These facts do not reflect a general pattern of discrimination and so cannot give rise to an inference of

discriminatory intent. Given these facts, and Plaintiffs' failure
to establish a loss of a legally protected right, Plaintiffs have
not met their evidentiary burden under § 1981.

As to the second count of the Complaint, breach of contract,
Plaintiffs cannot establish the existence of a valid contract. A
prima facie case for breach of contract first requires proof that
the basic elements of contract formation exist: offer, acceptance,
and consideration. Snyder-Falkinham v. Stockburger, 249 Va. 376,
381 (1995). Plaintiffs contend that the Disclosure Packet is a
binding contract between Plaintiffs and the BPTA, promising to
provide Plaintiffs with two exclusive parking spaces. Plaintiffs
allege that Defendant breached this contract by depriving
Plaintiffs of their second reserved parking space. However, the
evidence does not support the prerequisites to contract formation.
This insufficiency is fatal to Plaintiffs' claim.

The evidence shows that there was no offer or acceptance
communicated between BPTA and Plaintiffs. Typically, a contract
requires a bargained for exchange. Filak v. George, 267 Va. 612,
618 (2004) (It is the protection of bargained for expectations
that is "the major consideration underlying contract law"). The
"offer" is that which identifies the exchange. Restatement
(Second) of Contracts § 17 (1981); see Chang v. First Colonial Sav.
Bank, 242 Va. 388, 392 (1991). When the offeree communicates

11

acceptance of the offer to the offeror, the contract becomes effective. See Levy v. Beach Inv. Corp., 212 Va. 19 (Va. 1971).

In the instant case, there was no communication between BPTA and Plaintiffs regarding the Property prior to sale. BPTA did not participate in, or have any knowledge of the communications between Bogale, the real estate agents and Plaintiffs. Defendants provided the Disclosure Packet to Bogale. Bogale signed the document, acknowledging receipt, before providing the Packet to her real estate agent. This agent provided the document to Plaintiffs' agent, who then presented it to Plaintiffs. When Plaintiffs received the Discloser Packet, they also signed the document, stating: "I hereby acknowledge that I have received and read the information contained in this Association Disclosure Packet on 13th of August, 2016." No communication was made from Defendants to Plaintiffs. As is apparent from the face of the document, the Disclosure Packet was not an "offer" to Plaintiffs. The document indicated it was merely an informative packet prepared pursuant to statutory requirements and it was addressed to Bogale, not Plaintiffs. Plaintiffs also admit they never communicated with Defendants before purchase of the Property, but Plaintiffs contend that by signing the Packet, they were "accepting" the statements made therein. However, the Disclosure Packet signed by Plaintiffs was never returned to BPTA. This fact suggests that Plaintiffs

12

knew that their endorsement was not an acceptance of an "offer," but only an acknowledgement of information received.

Plaintiffs also fail to establish any exchange of consideration underlying the alleged contract. Consideration represents "the price bargained for and paid for a promise." Smith v. Mountjoy, 280 Va. 46, 53 (2010) (citation omitted). It may come in "a benefit to the party promising or a detriment to the party to whom the promise is made." GSHH-Richmond, Inc. v. Imperial Assocs., 253 Va. 98, 101 (1997) (citation omitted). Even a "very slight advantage" to one party or "a trifling inconvenience to the other is generally held sufficient to support the promise." Sager v. Basham, 241 Va. 227, 229-30 (1991) (quoting Brewer v. Bank of Danville, 202 Va. 807, 815 (1961)). Here, BPTA and Plaintiffs never bargained for anything in connection with the Disclosure Packet. BPTA was legally required to provide the Disclosure Packet to Bogale, pursuant to the Virginia Property Owners Act. The Virginia Code requires that a seller or the seller's authorized agent, "within 14 days after receipt of a written request and instructions," deliver "an association disclosure packet as directed in the written request." Va. Code Ann. § 55-509.5. Because BPTA was statutorily obliged to provide the Disclosure Packet, there was no consideration. See generally Keffer v. Grayson, 76 Va. 517 (1882); see also Smith v. Phillips, 77 Va. 548, 550-51 (1883) (A "promise to pay a debt for which the promisor is already

13

legally bound, is a mere *nudum pactum*, and adds noting to the force of the previous obligation."). By giving the Packet to Bogale, BPTA was neither receiving a benefit nor suffering a detriment, but was fulfilling a requirement to which they were already legally bound. Plaintiffs have failed to present facts establishing all three elements of contract formation and thus, Plaintiffs have not met their burden for a breach of contract claim. Consequently, their second count fails.

On June 14, 2020, Defendants filed a Motion to Strike (Dtk. No. 130) requesting the Court strike Plaintiffs' Memorandum opposing the Motion for Summary Judgment (Dkt. No. 127). Because the Court finds that Defendants are entitled to summary judgment on all claims, their Motion to Strike Plaintiff's Opposition should be DENIED as moot.

An appropriate order shall issue.


_Claude M. Hilton_
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
August _7_, 2020